**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JASON SCOTT POOLE, #47165-177, § | | |
|     Petitioner, § | | |
| § | | |
| v. § | | CIVIL NO. 3:15-CV-2940-D-BK |
| § | | (Criminal No. 3:13-CR-330-D(02)) |
| UNITED STATES OF AMERICA, § | | |
|     Respondent. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner's *pro se* motion to vacate sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge. Upon review of the relevant pleadings and applicable law, it is recommended that the motion be **DENIED**.

**I. BACKGROUND**

Petitioner pled guilty to possessing a controlled substance with intent to distribute and, on August 14, 2014, was sentenced at the low end of the sentencing guideline range to 188 months' imprisonment and a four-year term of supervised release. Crim. Doc. 76. He did not pursue a direct appeal.

In this timely section 2255 motion, which Petitioner indicates is "bare bones" and "will be amended in the future," he alleges ineffective assistance of counsel, claims his guilty plea was involuntary, and prospectively seeks relief under a then-pending sentencing reformation bill.[1] Doc. 2 at 5-9. On February 22, 2016, the government filed its response in opposition. Doc. 7.

---

[1] The Court subsequently granted Petitioner until November 16, 2015, to amend his skeletal motion after being notified that defense counsel forwarded Petitioner a copy of his client file. Crim. Doc. 85; Doc. 4. However, Petitioner did not do so.

Petitioner did not file a reply.  However, on June 29, 2016, Petitioner moved to supplement his motion to raise a claim based on the holding in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 2563 (2015), that imposing an increased sentence under the residual clause of the Armed Career Criminal Act (ACCA), 28 U.S.C. § 924(e), violates the Constitution's guarantee of due process.  Doc. 9.  The motion was granted.  Doc. 10.  Thus, the motion to vacate sentence under section 2255, as supplemented, is now ripe for review.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted.  *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*)).  Under section 2255, a petitioner can collaterally challenge his conviction "only on issues of constitutional or jurisdictional magnitude." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

### A. *Johnson* Claim

Petitioner's reliance on Johnson is misplaced.  *Johnson* has no bearing on Petitioner's case, since his sentence was not increased under the ACCA's residual clause -- the only provision that *Johnson* found to be unconstitutional.  *See Johnson*, ___ U.S. ___, 135 S. Ct. at 2563 (calling into question *only* the residual clause of the ACCA).  Rather the Presentence Report (PSR) (which was adopted at sentencing without change) calculated Petitioner's base offense level for possession with intent to distribute a controlled substance under U.S.S.G. § 2D1.1 (the drug trafficking guideline), without reference to the ACCA or U.S.S.G. § 4B1.4.  *See* Crim. Doc. 56-1 at 12-13, PSR ¶¶ 47-53; Crim. Doc. 77 at 1, Statement of Reasons (SOR).

Moreover, Petitioner was also not sentenced as a career offender under U.S.S.G. § 4B1.1.

Although the PSR included a base offense level calculation under the career offender guidelines, the calculation ultimately had no impact on Petitioner's guideline range or sentence. That is because the applicable base offense level under section 2D1.1 (the drug guidelines) was greater than the base offense level under the career offender provisions; thus, the base offense level under section 2D1.1 was used to calculate Petitioner's advisory guideline sentencing range. Crim. Doc. 56-1, PSR at ¶ 53. *See* U.S.S.G. § 4B1.1(b) ("if the offense level for a career offender …is greater than the offense level otherwise applicable, the offense level [for career offender] shall apply") (emphasis added). Also, the career offender designation had no impact on Petitioner's criminal history category which, based on Petitioner's prior convictions alone, was Category VI.[2]  Doc. 56-1 at 16. Consequently, even assuming the Supreme Court finds *Johnson* retroactively applicable to the career offender provision of the Sentencing Guidelines,[3] *see Beckles v. United States*, 616 Fed. Appx. 415 (11th Cir. 2015), *cert. granted*, ___ U.S. ___, 136 S. Ct. 2510 (2016), Petitioner will be entitled to no relief.

In sum, Petitioner's claims are not premised on a penal statute or Sentencing Guidelines provision that contains or incorporates any clauses resembling the ones found unconstitutional in *Johnson*. Therefore, *Johnson* is not applicable in this case and this claim fails.

### B. Ineffective Assistance of Counsel (Claims 1-2)

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*

---

[2] "A career offender's criminal history category in every case … shall be Category VI." U.S.S.G. § 4B1.1(b).

[3] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

*v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

To prove the deficient performance under *Strickland*, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To demonstrate prejudice in the context of a guilty plea, the petitioner must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* To prevail on a claim of ineffective assistance of counsel at sentencing, the petitioner must demonstrate that his sentence was increased on account of the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-204 (2001).

### 1. Petitioner's Allegations Are Vague and Conclusory

As the Government correctly notes, Petitioner's ineffective assistance of counsel claims are conclusory and vague, and should be summarily dismissed.

Petitioner's bare assertions of counsel's (1) failure to investigate, (2) raise Fourth Amendment challenges, (3) provide him with a copy of the discovery, (4) advise him about the appeal waivers, and (5) object at sentencing, Doc. 2 at 5-7, are vague and insufficient to plead a Sixth Amendment claim. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (declining

to consider vague ineffective assistance of counsel claim).  Again, Petitioner admittedly filed "bare bones" claims, which he declined to amend, despite being given the opportunity to do so. Without specific allegations of what counsel did or did not do, Petitioner fails to raise any issue of constitutional import.  Indeed, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Pineda*, 988 F.2d at 23 (quotations and quoted case omitted); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").  That notwithstanding, each of Petitioner's ostensible claims fails on the merits, as detailed *infra*.

### 2. Petitioner's Claims Lack Merit

Petitioner argues counsel failed to hire an investigator and interview witnesses.  He maintains that "a thorough investigation" would have revealed that "the witnesses were lying," and faults counsel for relying primarily on the government's evidence. Doc. 2 at 5, 7.  Petitioner, however, has failed to show with specificity what an investigation would have revealed, and more importantly how it would have altered the outcome of his plea.  *See United States v. Curtis*, 769 F.3d 271, 276, 277-278 (5th Cir. 2014) (cited cases omitted) ("To establish [a] failure to investigate claim, [a defendant] must allege with specificity what the investigation would have revealed *and how it would have benefitted him.*") (quoted case omitted, emphasis in original).

Petitioner posits counsel should have raised Fourth Amendment challenges to "the GPS tracking" of his cell phone and "the search of his car." Doc. 2 at 7.  But he provides no other details from which the Court can glean that such a challenge would not have been frivolous and that it would have affected the outcome of his case.  Likewise Petitioner claims that counsel failed to review the discovery materials with him or provide him a copy of the same, thus, he

could not "make an informed decision whether to plead or go to trial." Doc. 2 at 5-6. Again his assertion is conclusory. Even assuming deficient performance, Petitioner has wholly failed to demonstrate prejudice – namely that he would not have pleaded guilty if he had known about any evidence included in the discovery materials (or lack thereof), and that he would have insisted on going to trial. *Hill,* 474 U.S. 52, 59 (1985). He has offered no proof other than his belated assertions here that he even considered doing anything other than entering a knowing and voluntary plea. In the light of his solemn assurances of his understanding of the guilty plea process and consequences of his plea at the Rule 11 hearing, versus the hindsight of a fate certain after sentencing, Petitioner's complaints of counsel's performance, with nothing more, fall woefully short of the legal burden he must bear here.

Petitioner also maintains counsel assured him that his sentence in a pending state case would run concurrently with his federal sentence, and that he relied on that promise in deciding whether to plead guilty. Doc. 2 at 7. Yet his assertion is refuted by his own declaration under oath, during the plea hearing, that he understood that the Court would decide his sentence, that no one had made any promises to cause him to enter into the plea agreement, and that anything his lawyer said about his sentence was only "an opinion, not a guarantee or promise." Crim. Doc. 86 at 13-16. Declarations made under oath in open court carry a strong presumption of truth, forming a formidable barrier to relief in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).[4]

Next, Petitioner asserts counsel "misled" him about the appeal waiver and "told him and his mother that [he] had no other choice and that [he] could still appeal and challenge certain

---

[4] Moreover, according to the PSR, no charges were pending against Petitioner. Crim. Doc. 56-1 at 17, PSR ¶ 70. Thus, it is unclear what state charge Petitioner is referring to in his section 2255 motion.

issues." Doc. 2 at 8.  Once more Petitioner's self-serving, unsupported assertions do not refute his testimony under oath during the plea hearing.  Indeed, Petitioner affirmed that he was waiving his appeal right "except in very limited circumstances," that he understood the appeal rights that he was waiving, and that he voluntarily chose to give up those rights.  Crim. Doc. 86 at 16-17.  Defense counsel confirmed that the plea waiver was "something that was negotiated," *id.* at 17, and Petitioner offers nothing to show that he would have proceeded to trial but for the confusion about the appeal waiver and the overwhelming evidence against him he now claims.

Lastly, Petitioner asserts counsel rendered ineffective assistance at sentencing when he failed to dispute that the methamphetamine allegedly came from Mexico.  Doc. 2 at 5-6.  The record yet again belies this assertion.  Counsel filed a written objection to the enhancement, Crim. Doc. 68 at 25, and presented testimony challenging the government's evidence at sentencing, Crim. Doc. 87 at 30-31.  However, the Court overruled the objection, concluding by a preponderance of the evidence that the methamphetamine was imported from Mexico.  *Id.* at 37-38.  Based on this record, Petitioner's complaint is simply frivolous.

Petitioner has failed to establish that counsel's performance during the guilty plea proceeding and at sentencing was deficient or that it prejudiced him.  Accordingly, his ineffective assistance of counsel claims fail.

### C. Involuntary Guilty Plea (Claim 3)

Petitioner asserts his guilty plea was not knowing and voluntary.  Doc. 2 at 8.  Because Petitioner failed to raise this claim on direct appeal, it is procedurally defaulted, absent a showing of cause and prejudice or that the petitioner is "actually innocent" of the crime for which he was convicted.  *See United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (*citing United States v. Frady*, 456 U.S. 152, 168 (1982)); *Bousley v. United States,* 523 U.S. 614, 621

(1998) (voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review) Petitioner presents nothing to satisfy either the cause-and-actual prejudice or the actual innocence prong.  Nevertheless, he fails to establish a meritorious claim.

A guilty plea must be knowingly, voluntarily, and intelligently made to be constitutionally valid.  *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel.  *United States v. Washington,* 480 F.3d 309, 315 (5th Cir. 2007).  A defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath.  *Cervantes,* 132 F.3d at 1110.  A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records.  *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

Here, the only conclusion supported by the record is that Petitioner's guilty plea was indeed knowing and voluntary.  During the Rule 11 hearing, Petitioner assured the Court under oath that he understood the essential elements and admitted committing each of them.  Crim. Doc. 86 at 19-20.  He confirmed that (1) he had reviewed the plea agreement with counsel, that he understood all of its provisions -- including waiver of his right to appeal and to seek collateral relief; (2) no one had made any promises to cause him to enter into the plea agreement; and (3) he was pleading guilty freely and voluntarily.  Crim. Doc. 86 at 8-10.  In addition, Petitioner confirmed that he had reviewed the factual resume before signing it, and that the stipulated facts

were true.  Crim. Doc. 86 at 20.  He averred that he was fully satisfied with his counsel's advice.  Crim. Doc. 86 at 7.  Petitioner also indicated that he understood the Court would determine the sentence after considering the Presentence Report (PSR) and consulting the Sentencing Guidelines.  Crim. Doc. 86 at 13-14.

Moreover, Petitioner had abundant time after the entry of his guilty plea and through sentencing, approximately five months, to advise the Court that his guilty plea was involuntary and/or that he was dissatisfied with defense counsel's conduct.  Yet, at sentencing, Petitioner voiced no objection or concerns about his guilty plea or his counsel's advice and allegedly deficient performance.  Crim. Doc. 87.

Accordingly, Petitioner's claim challenging the voluntariness of his guilty plea fails.

### D.  Sentencing Relief

Lastly, Petitioner requests the Court to hold his section 2255 motion in abeyance in anticipation of Congress passing a bill that ultimately will result in a reduction of the applicable guidelines range in his case.  Doc. 2 at 9.  However, such a request is inappropriate.  If and when a retroactive Sentencing Guideline Amendment is instituted, the law provides a procedure for Petitioner to seek a sentence reduction.  *See* 18 U.S.C. § 3582(c)(2) (setting out the circumstances for discretionary reduction of the sentence "of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)").

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the section 2255 motion be **DENIED**.

**SIGNED** February 1, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE